YOLANDA HUANG, CA State Bar # 104543
PO Box 5475
Berkeley, CA 94705
Telephone: (510) 329-2140
Facsimile: (510) 580-9410

Attorneys for Plaintiff
RICKEY CLAY aka
BAKARI OLATUNJI

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

RICKEY CLAY also known as BAKARI OLATUNJI

Plaintiff,

vs.

CITY OF OAKLAND, DEANNA SANTANA, BLAIR ALEXANDER, R. VAN SLOTEN, MARCOS CAMPOS, DOES 1-250.

Defendants.

Case No. 3:13-cv-04633-NC

FIRST AMENDED CIVIL RIGHTS COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

DEMAND FOR JURY TRIAL

**INTRODUCTION**

1. This is a civil rights action arising from the unconstitutional and unlawful arrest and incarceration of plaintiff, Bakari Olatunji, on May 4, 2012, by the Oakland Police Department (hereinafter "OPD").

2. That day, plaintiff, along with many others of the public, attended an Oakland Police Department "Open House Event", where OPD had invited all "Residents of Oakland" to attend to "have an opportunity to meet the Chief of Police, members of his

command staff, and other OPD personnel." The OPD flier stated "This is a great opportunity for members of the community to get a closer look at who we are and what we do."

3. Plaintiff was a resident of Oakland, is currently a resident of Oakland, and has been a resident of Oakland for many years.

4. Mr. Clay is a donor and volunteer with the Uhuru House of Oakland. Uhuru House is an organization, with two business located in the City of Oakland. The two Uhuru House businesses within the City are Uhuru Furniture and Uhuru Pies. Uhuru House is a project of the African People's Education and Defense Fund, with the following mission: 1) Defending the human and civil rights of the African community. 2) Addressing the grave disparities in education, health and economic development.

5. Uhuru House members decided to use this OPD Open House for an opportunity to exercise their Constitutional Rights to freedom of speech, assembly and association under the federal and state constitutions by serving a subpoena issued by the African People's Education and Defense Fund to the Chief of Police, Howard Jordan, to appear before the People's Court of the African People's Education and Defense Fund to answer questions regarding police brutality against members of the Oakland Community.

6. Plaintiff attended the OPD Open House, and while doing nothing more than walking through the OPD Administration building, he was grabbed by two uniformed officers, marched outside and arrested.

7. The reports in this case were written by the 3 officers named in this claim, Lt. Blair Alexander, Sgt. R. Van Sloten, and Ofc. Marcos Campos, all whom state that Mr. Olatunji committed certain acts, which justified his forcible removal, the arrest and subsequent charges. However, the statements in the police reports are inaccurate, and in certain respects, false. However, as a result of these inaccurate and false police reports, Mr. Clay was arrested, taken to jail, spent time incarcerated, and was required to post bail, hire an attorney, defend against the charges and incur out of pocket expenses before all charges were dismissed.

8. Plaintiff was charged with violation of two misdemeanors, Penal Code Sections 69 and 148(a)(1). After prosecuting the case for 6 months, the district attorney dismissed all charges on the eve of trial.

9. Following the dismissal of the charges, plaintiff filed a complaint with the OPD Internal Affairs and the City of Oakland's Citizens Police Review Board (hereinafter "CPRB"). Internal Affairs has never responded or otherwise communicated with plaintiff. The CPRB staff sustained findings that the three police officers had filed false and inaccurate police reports. The staff recommendations were upheld by the unanimous CPRB Board. The City Administrator, Deanna Santa refused to sustain the CPRB's findings, instead found "no findings". Plaintiff alleges on information and belief that the defendant officers received no discipline for their police misconduct.

10. The challenged OPD misconducts create a substantial chilling effect and deterrent to future First Amendment protected activity in Oakland, and to the constitutional freedom of association for plaintiff. Mr. Olatunji intends to continue associating with the Uhuru House,to continue to work for the rights of African People, and to continue to participate in the exercise of First Amendment activities in the City of Oakland in the future.

11. Defendants' actions deprived the plaintiff of his right to freedom of speech and association; the right to be free from unreasonable searches and seizures; the right to equal protection of the laws and to due process of law; the right to be free from the use of excessive and/or arbitrary force; and the right to privacy, all guaranteed by the United States and California Constitutions, as well as additional state law claims relating to the police actions complained of herein.

12. Plaintiff seeks damages and declaratory and injunctive relief to restrain defendants from continuing to violate plaintiff's federal and state constitutional and statutory rights, from using false arrests, false imprisonment, false police reports, and then actions to protect police officers who engage in writing false police reports, false arrests and false imprisonment, and other unlawful actions to disrupt, interfere with and deter future exercise of First Amendment Rights in the City of Oakland. Plaintiff seeks an injunction requiring the Defendants to seal, return and/or destroy any records of Plaintiff's arrest.

Plaintiff also seeks monetary damages for the injuries he suffered when he was falsely detained, arrested and imprisoned.

## JURISDICTION

13. The jurisdiction of the Court is invoked pursuant to 42; U.S.C. § 1983 et seq.; 28 U.S.C. §§ 1331 and 1343(a). Supplemental jurisdiction over state law claims exists pursuant to 28 U.S.C. § 1367. Venue is proper in the Northern District of California as the events complained of occurred in this district.

14. Plaintiff has filed an administrative claim with the City of Oakland in compliance with California Government Code §§ 910, et seq. The claims have been denied expressly or by operation of law.

## INTRADISTRICT ASSIGNMENT

15. The claims alleged herein arose in the City of Oakland, State of California. Therefore, venue and assignment lies in the United States District Court for the Northern District of California, San Francisco Division or Oakland Division.

## THE PARTIES

16. Plaintiff is a long time resident of the City of Oakland, and is a gainfully employed registered nurse. Plaintiff has been active in the Uhuru Movement for over twenty-five years, and participated in activities on housing rights and the problems of homelessness, providing free medical services, and speaking out for community control of police.

17. Defendant **City of Oakland** is a charter city, organized under the constitution and the laws of the State of California. The City of Oakland employs and directs the OPD, the individual Defendants, its City Administrator, the Community Police Review Board and is responsible for the policies, practices and customs of the OPD, and the training and discipline of its police officers,

18. Defendant **Deanna Santa** is, and at all times relevant herein was, the City Administrator for the City of Oakland. Defendant Santana held and holds the top administrative decision making, command and/or policy making position for the City of Oakland. She is and was responsible for the operations of the City of Oakland; and for implementing the goals and policies of the City of Oakland, including selection and

supervision of the Chief of Police and review and implementation of policies for officer training and officer discipline. Defendant Santana is also the final authority on enforcement of any police officer discipline following the CPRB Board findings of police officer misconduct, and personally made the decision not to sustain the unanimous decision of the Citizens Police Review Board finding that defendant police officers had engaged in misconduct by filing false police reports; thereby preventing any discipline from being imposed on the individual officers for the complained of behavior. At all times relevant herein, defendant Santana was acting under the color of law, under color of authority and in the scope of her employment as City Administrator for the City of Oakland. She is sued in her individual and official capacities.

19. Defendant **Blair Alexander**, at all times relevant herein was a lieutenant of the Oakland Police Department and an employee of the OPD. On the evening of May 4, 2012, defendant Alexander was an officer on duty at the Open House, directly participated in and was responsible for the supervision and actions of defendants Van Sloten and Campos who were involved in the forcible removal of plaintiff from the OPD administration building, false arrest and the writing of police reports with significant erroneous or false facts. Additionally, upon information and belief, Defendant failed, with deliberate indifference to Plaintiff's rights, to adequately supervise OPD officers who were involved in violating the rights of the Plaintiff. At all times relevant herein, all of the Defendant Alexander was an officer and employee acting under the color of law, under color of authority and in the scope of his employment as Supervisory Personnel of the Oakland Police.

20. Defendants Sgt. **R. Van Sloten**, and Ofc. **Marcos Campos**, at all times relevant herein, were police officers in the Oakland Police Department and employees of the OPD who were directly involved in violating the rights of the Plaintiff, including the writing of police reports with significant erroneous or false facts. Additionally, upon information and belief, one or more of these Defendants wrote said police reports, either deliberately or, with deliberate indifference to Plaintiff's rights. At all times relevant herein, the above individual Defendant were employees and were acting under the color of law, under

color of authority and in the scope of their employment of the OPD and the City of Oakland.

21. Plaintiff is ignorant of the true names and/or capacities of defendants sued herein as DOES 1 through 50, inclusive, and therefore sue said defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. The Doe defendants include other government entities, as well as individuals, who participated in the conduct complained of herein. Plaintiff is informed and believe and therefore allege that each of the Doe defendants is legally responsible and liable for the incident, injuries and damages hereinafter set forth, and that each of said defendants proximately caused said incidents, injuries and damages by reason of their negligence, breach of duty, negligent supervision, management or control, violation of constitutional and legal rights, or by reason of other personal, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon agency, employment, or control or upon any other act or omission. Plaintiff will ask leave to amend this complaint to insert further charging allegations when such facts are ascertained.

22. Each of the defendants, including defendants DOES 1 through 50, caused, and is responsible for, the below-described unlawful conduct and resulting injuries by, among other things, personally participating in the unlawful conduct or acting jointly or conspiring with others who did so; by authorizing, acquiescing in or setting in motion policies, plans or actions that led to the unlawful conduct; by failing to take action to prevent the unlawful conduct; by failing and refusing with deliberate indifference to plaintiff's rights, to initiate and maintain adequate training and supervision; and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action.

23. In doing the acts alleged herein, defendants, and each of them, acted within the course and scope of their employment.

24. In doing the acts and/or omissions alleged herein, defendants, and each of them, acted under color of authority and/or under color of law.

25. In doing the acts and/or omissions alleged herein, defendants, and each of them, acted as the agent, servant, employee and/or in concert with each of said other defendants.

## FACTUAL ALLEGATIONS

26. On May 4, 2012, in response to the widely publicized invitation to all residents of the City of Oakland, Uhuru House members and volunteers, including Mr. Olatunji, gathered at the entrance of OPD Headquarters on 7th Street. They came with the intent of meeting Chief Jordan and attempting to engage him regarding police mistreatment of African-American residents in Oakland. Once gathered outside, speeches were made and videotaped, explaining that Uhuru House was present to seek out Chief of Police Jordan, and to serve a subpoena on him. Members of the Oakland Police Department were standing by, and witnessed these speeches.

27. Initially, these members of the Oakland Police Department barred the paths of African American and/or and male volunteers with Uhuru House, and would not let them inside the building to attend the Open House. Mr. Olatunji is a male of African-American descent, and had his entrance barred by OPD officers. At this time, white individuals and female volunteers were permitted inside OPD headquarters. After some discussion, these officers ceased their blockage, and allowed all the individuals associated with Uhuru House inside.

28. Bakari Olatunji was in the last third of the group who entered into the OPD Administration building. During the entire time that Mr. Olatunji was inside OPD Headquarters, he walked around, at a leisurely pace. His goal was to see if he could identify Chief Jordan. Mr. Olatunji did not make any sounds while he was inside OPD Headquarters. He did not talk. He did not disturb any of the events going on. He did not touch any individual nor anything inside the building. He did not interrupt the entertainment. He sole activity was to walk around the interior of the OPD Administration Building, as an invited member of the community, looking for Chief Jordan.

29. Very shortly thereafter after Mr. Olatunji was inside the Open House, two members of the Oakland Police physically grabbed Mr. Olatunji, pulled his arms behind him, and dragged him outside. There was no verbal communication or other exchange prior to grabbing Mr. Olatunji.

30. Once out the door, Mr. Olatunji asked what was going on, and upon his question, was immediately arrested and charged with violating Penal Code 69 (misdemeanor) and 148(a)(1) (misdemeanor). At no time prior to being physically removed was Mr. Olatunji asked to leave nor informed that he was being disruptive. At no time did Mr. Olatunji resist, or refuse to leave.

31. Plaintiff was taken to Santa Rita. He was later able to pay a bailbondsman $2,500 toward a total bail of $25,000 and was released. Mr. Olatunji was required to retain counsel to represent him in these criminal matters, at a cost of $10,000.

32. There were approximately eight court hearings, which Mr. Olatunji attended. In attending court, Mr. Olatunji, who is employed as a registered nurse, had to miss work, and as a result lost wages. Because Mr. Olatunji is a registered nurse working in a hospital, if he is unable to be present for a portion of the day, the hospital he works for is required to find a substitute nurse to cover Mr. Olatunji's shift. As a result, Mr. Olatunji was required to miss an entire day of work, for which he lost an entire day's wages for each court appearance.

33. While facing prosecution, Mr. Olatunji requested discovery as is his right. OPD failed and refused to make available, OPD's own video recordings of the alleged incident. Mr. Olatunji was required to have his attorney file a motion to compel said discovery, and even after the motion was granted, OPD still refused and failed to produce its own video recordings of the alleged incident.

34. Trial was set for the 3rd week of November, 2012. At the trial readiness conference, shortly before the trial, the District Attorney dismissed all charges. The District Attorney never provided the requested discovery. On information and belief, plaintiff alleges that OPD never produced OPD's own video recordings of the alleged

incident, and refused to produce said videos because these videos contradicted the police reports.

35. The police reports written by defendant Van Sloten was filled with errors and false statements regarding plaintiff, including accusing plaintiff of trying to grab "one of the mikes", trying to speak into the mike, and "disrupting the youths who were attempting to play their instruments." Based upon these false accusations, defendant Van Sloten requested that plaintiff be removed from the building.

36. Defendant Alexander was one of the individuals who grabbed plaintiff and forced him out of the building. Defendant Alexander also wrote in his police report, the false and erroneous statements that plaintiff was angry, made threatening non-verbal threats, including balling his hands into fists, and falsely accused plaintiff of being ready to throw a punch. Defendant Alexander instructed defendant Campos to arrest Plaintiff.

37. Defendant Campos erroneously stated that at the time of the incident outside of the building, plaintiff was standing "chest to chest, shoulder to shoulder and arm to arm" with defendant Alexander. Defendant Campos also erroneously stated that plaintiff was directly threatening and challenging defendant Alexander.

38. The officers' police reports do not comply with California's Peace Officer Standards Training (Hereinafter "POST"), and in fact, wrongly and falsely attribute behavior to Mr. Olatunji, which he did not do. Videos shot by Uhuru House are evidence of the erroneous, inaccurate and false statements in the written police reports.

39. All California Police Officers are required to comply and follow POST standards. POST standards states that all police reports are to be "true, unbiased and unprejudiced". (Basic Course Workbook Series, Student Materials, Learning Domain 18, Investigative Report Writing, Version 3.1, 2012, p. 1-5) Furthermore, all police reports are to meet the standards of FACCCT: Factual, Accurate, Clear, Concise, Complete and Timely. (p. 1-11 to 1-16) The Accurate portion states that "[t]here must be no inconsistencies or discrepancies between what took place and what is documented in the officer's report." [emphasis in the original] (p. 1-12).

40. POST standards were violated when the three police officers wrote police reports in which there were significant inconsistencies and discrepancies between what took place and what is contained in the police report.

41. In violation of police officers' moral duty to seek the truth, defendants caused plaintiff to be forcibly removal and arrested based upon false police statements.

42. Defendant Alexander had been the subject of a prior citizens complaint to the CPRB resulting from an incident in January 2010. The CPRB Board in that complaint had also unanimously supported the CPRB's staff recommendation of a sustained misconduct finding. Defendant Santana had also failed and refused to sustain the CPRB Board's finding of misconduct stemming from the January 2010 incident.

43. Defendant Santana refusal and failure to sustain the finding of misconduct arising out of the January, 2010 incident signaled that she would refuse to sustain criticism of the police department and block discipline of police officers in misconduct situations. This action by Defendant Santana signaled to OPD police officers including defendant officers and each of them that their police misconduct would receive the support and backing of the City of Oakland's top administrator and policy maker.

44. During the time of defendant Santana's employment in the City of Oakland as the Oakland City Administrator, the Oakland Police Department was under the control of a federal judge, resulting from a long standing settlement agreement, arising out of the case, Delphine Allen v. City of Oakland, et al. 3:00-cv-04599-THE, (Northern District of California), in which police officer misconduct and false statements in police reports were involved. Public concern regarding police misconduct by OPD officers was also widely expressed during defendant Santana's employment.

45. Defendant Santana was aware, cognizant and familiar with, or should have known of the long standing problems in the Oakland Police Department involving police misconduct, including false statements in police reports, and that these behaviors deprived residents of Oakland, such as plaintiff Olatunji, of his rights under the laws of the United States and California, and the United States and California Constitutions.

46. Defendant Santana, by refusing to uphold the CPRB's findings of police misconduct stemming from the January, 2010 incident, by refusing to impose discipline against OPD officers who engaged in said police misconduct, knew, or reasonably should have known that such actions would cause OPD officers, including defendant officers herein, to continue to engage in police misconduct which would deprive individuals, including plaintiff Olatunji, of his rights under the United States and California Constitutions, and under United States and California laws, such as resulted on May 4, 2012.

47. Plaintiff contends, on information and belief, that Defendant City of Oakland, has a policy, pattern, practice, tradition, custom and/or usage of failing and refusing to hold Oakland police officers accountable, and of failing and refusing to mete out discipline to OPD officers, including defendants named herein, commit misconduct. This policy, pattern, practice, tradition, custom, and/or usage is carried out with the approval and under the authority of the City Administrator Santana.

48. Defendant City of Oakland failed to adequately train and instruct its police officers, including defendant officers herein, on how to conduct themselves and on how to handle the recurring situations in which they interact with members of the community, including defendant Olatunji, when said individuals are exercising their rights under the United States and California Constitutions. This failure to adequately train and inspect was carried out with the approval and under the authority of the City Administrator Santana.

49. Defendants City of Oakland and Santana were deliberately indifferent to the obvious consequences of its failure to adequately train its police officers and the obvious consequences of its failure to hold police officers accountable to professional peace officer standards.

50. When defendant Santana refused to sustain the CPRB's unanimous finding of misconduct arising out of plaintiff's complaint against defendant officers Blair, van Sloten and Campos, defendant Santana, on behalf of herself and defendant City of Oakland, ratified defendants Alexander, Van Sloten and Campos' actions and the basis for said actions.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

Violation Of First Amendment To The United States Constitution

(42 U.S.C. § 1983)

51. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 50 of this complaint.

52. Defendants' and each of their above-described conduct violated plaintiff's rights to freedom of speech and association under the First Amendment to the United States Constitution.

### SECOND CLAIM FOR RELIEF

Fourth Amendment To United States Constitution

(42 U.S.C. § 1983)

53. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 50 of this complaint.

54. Defendants' and each of their above-described conduct violated plaintiff's rights to be free from unreasonable seizures and excessive and/or arbitrary force and/or arrest and/or imprisonment without reasonable or probable cause under the Fourth Amendment to the United States Constitution.

### THIRD CLAIM FOR RELIEF

Fourteenth Amendment To United States Constitution

(42 U.S.C. § 1983)

55. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 50 of this complaint.

56. Defendants' and each of their above-described conduct violated plaintiff's right to not be deprived of liberty without due process of law under the Fourteenth Amendment to the United States Constitution.

FOURTH CLAIM FOR RELIEF

Fourteenth Amendment To United States Constitution

(42 U.S.C. § 1983)

57. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 50 of this complaint.

58. Defendants' and each of their above-described conduct violated plaintiff's rights to equal protection of the laws under the Fourteenth Amendment to the United States Constitution.

FIFTH CLAIM FOR RELIEF

Violation of California Civil Code § 51.7

59. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 50 of this complaint.

60. Defendants' and each of their above-described conduct violated plaintiff's right to be free from violence and intimidation by threat of violence because of their actual or perceived political affiliation and/or viewpoint, in violation of California Civil Code §51.7.

SIXTH CLAIM FOR RELIEF

Violation of California Civil Code §52.1

61. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 50 of this complaint.

62. Defendants' and each of their above-described conduct constituted interference, and attempted interference, by threats, intimidation and coercion, with plaintiff's peaceable exercise and enjoyment of rights secured by the Constitution and laws of the United States and the State of California, in violation of California Civil Code §52.1.

SEVENTH CLAIM FOR RELIEF

Negligence

63. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 50 of this complaint.

64. Defendants City of Oakland and Santana have a duty of care to plaintiff to ensure that defendants did not cause unnecessary or unjustified harm to plaintiff, and a duty of care to hire, train, supervise and discipline OPD and officers so as to not cause harm to plaintiff and to prevent violations of plaintiff's constitutional, statutory and common law rights. Defendant Alexander as a Lieutenant within the Oakland Police Department has a duty of care to plaintiff to ensure that officers, including defendant Van Sloten and Campos, under his supervision and command, did not cause unnecessary or unjustified harm to plaintiff, and a duty of care to hire, train, supervise and discipline defendants Van Sloten, Campos and other OPD officers under his command and supervision so as to not cause harm to plaintiff and to prevent violations of plaintiff's constitutional, statutory and common law rights.

65. The above-described acts and omissions of defendants breached the duty of care defendants owed to the named individual plaintiff.

REQUISITES FOR RELIEF

66. Plaintiff is informed and believe that the violations of the plaintiff's constitutional and lawful rights complained of herein were caused by customs, policies, directives, practices, acts and omissions of authorized policy makers of the defendants CITY OF OAKLAND, OPD, including defendants SANTANA, KENNEDY, VAN SLOTEN and CAMPOS and other supervisory officials and employees of the OPD who encouraged, authorized, directed, condoned, and ratified the unconstitutional and unlawful conduct complained of herein. Said customs, policies and practices include, but are not limited to the use of arrests without probable cause to disrupt and deter demonstrators and First Amendment protected activity; the failure to maintain adequate policies, and to adequately train, supervise and control OPD officers concerning the policing of activities in which members of the public engage in protected FIRST AMENDMENT activity and other expressive activities, and the constitutional and statutory limitations on arrests and imprisonment.

67. As a direct and proximate result of the conduct of defendants described herein, Plaintiff has been denied his constitutional, statutory and legal rights as stated below, and

have suffered general and special damages, including but not limited to, mental and emotional distress, physical injuries and bodily harm, pain, fear, humiliation, embarrassment, discomfort, and anxiety and other damages in an amount according to proof.

68. Defendants' acts were willful, wanton, malicious and oppressive and done with conscious disregard and deliberate indifference for plaintiff's rights.

69. Defendants' policies, practices, customs, conduct and acts alleged herein have resulted and will continue to result in irreparable injury to plaintiff, including but not limited to violations of his constitutional and statutory rights. Plaintiff has no plain, adequate or complete remedy at law to address the wrongs described herein. Plaintiff intends in the future to exercise his constitutional rights of freedom of speech and association by engaging in First Amendment and expressive activities in the City of Oakland. Defendants' conduct described herein has created fear, anxiety and uncertainty in plaintiff with respect to the exercise, now and in the future, of constitutional rights within the City of Oakland. Plaintiff therefore seek injunctive relief from this court, to ensure that plaintiff and persons similarly situated will not suffer violations of their rights from defendants' illegal and unconstitutional policies, customs and practices as described herein. Plaintiff also seek injunctive relief in the form of an order requiring that defendants seal and destroy any records derived from plaintiff's arrests, including fingerprints, photographs, and other identification and descriptive information, and all information, and biological samples and information obtained from such biological samples collected from the plaintiff, and identify to the plaintiff all entities and agencies to which such information has been disseminated; and that all such disseminated records be collected and destroyed.

70. An actual controversy exists between plaintiff and defendants in that plaintiff contends that the policies, practices and conduct of defendants alleged herein are unlawful and unconstitutional, whereas plaintiff is informed and believe that defendants contend that said policies, practices and conduct are lawful and constitutional. Plaintiff seeks a declaration of rights with respect to this controversy.

PRAYER

WHEREFORE, plaintiff prays for judgment against defendants, and each of them, as follows:

1. For preliminary and permanent injunctive relief restraining defendants from engaging in the unlawful and unconstitutional actions complained of above;

2. For preliminary and permanent injunctive relief requiring defendants to seal and destroy all records derived from this arrest, including all fingerprints, photographs, identification and descriptive information, and all biological samples and information obtained from such biological samples collected from the plaintiff;

3. For entry of an order that disclosure be made in writing to plaintiff and the Court as to all entities and agencies to which such material has been disseminated and by whom gathered; and that all records disseminated be collected and sealed, including all copies of such disseminated records that may have been subject to dissemination by others;

4. For entry of an order declaring the arrest null and void;

5. For a declaratory judgment that defendants' conduct complained of herein was a violation of plaintiff's rights under the Constitution and laws of the United States and California;

6. For general and compensatory damages for violation of plaintiff's federal and state constitutional and statutory rights, pain and suffering, all to be determined according to proof;

7. For punitive and exemplary damages in amounts to be determined according to proof as to the individual defendants;

8. For an award of statutory damages and penalties pursuant to Cal. Civil Code section 52(b) to be determined according to proof;

9. For attorneys' fees pursuant to 42 U.S.C. § 1988 and California Civil Code section 52(b) and section 52.1(h), and California Code of Civil Procedure section 1021.5;

10. For costs of suit;

11. For pre- and post-judgment interest as permitted by law;

12. For such other and further relief as the Court may deem just and proper.

13. Plaintiff hereby demand a trial by jury of all issues so triable.

Dated: November 12, 2013

YOLANDA HUANG
Attorney for Plaintiff
BAKARI OLATUNJI aka
RICKY CLAY

__/s/ *Yolanda Huang*_____________